# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MIDLEVELU, LLC, | ) Case No. _____ |
| Plaintiff, | ) |
| vs. | ) COMPLAINT |
| | ) DEMAND FOR JURY TRIAL |
| ACI INFORMATION GROUP, | ) |
| Defendant. | ) |

## COMPLAINT

This is a civil complaint for copyright infringement filed by Plaintiff, MidlevelU, LLC ("MidlevelU"), against ACI Information Group ("ACI"). MidlevelU alleges as follows:

## BACKGROUND

1. MidlevelU is a long-standing resource for "Midlevels," such as nurse practitioners or NPs, who are licensed to provide a greater level of health care services than a registered nurse or RN.

2. MidlevelU generates original content that it posts on its website. MidlevelU has authored hundreds of original, valuable articles of interest to medical providers. Each of these articles is protected under federal copyright law from infringement.

3. ACI is a fee-for-service company that markets content to individual subscribers and other organizations.

4. Without permission or license, ACI took hundreds of valuable MidlevelU articles and posted them on its website, and, upon information and belief, distributed them to third parties to whom it markets content.

5. Despite claiming that it always seeks permission before posting third-party content, ACI never asked MidlevelU if it could use or distribute MidlevelU content and likewise never informed MidlevelU that ACI was now selling MidlevelU content on the ACI website.

## PARTIES

6.      The Plaintiff is MidlevelU, a member-managed Tennessee Limited Liability Company, headquartered at Midtown Office Suites, Suite 306/307 1900 Church Street Nashville, TN 37203.

7.      The Defendant is ACI Information Group, a business entity. ACI claims it is a "truly virtual company," and that its team works "from their own offices and are located across the United States and Europe." On the Terms of Use page of its website, ACI states that "claims of copyright or other intellectual property" should be sent to ACI Information Group, 3000 N. Ocean Drive, #17A, Riviera Beach, Florida, 33404.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this case pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*

9.      ACI has affirmatively selected this District as the District in which it may be served with notice of this lawsuit and, upon information and belief, ACI conducts other business in this District, and therefore there is personal jurisdiction over ACI in this Court.

10.     Venue is appropriate in this Court. Based on the representations on the ACI website, Plaintiff asserts on information and belief that ACI resides in this District and a substantial part of the events giving rise to this claim would fairly be considered to have occurred in this District. And, even if that was not the case and there was no such District, this District is a proper venue because ACI is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

11.     Plaintiff MidlevelU owns a website that provides articles, information, career advice, job postings and other helpful materials to nurse practitioners and those seeking to become nurse practitioners. It also offers a login area where members can create a profile, send messages to other members, post on a general message board viewable by all members, and view video content created and provided by MidlevelU.

12. The MidlevelU website and the content thereon is available to individuals worldwide at midlevelu.com.

13. The individual primarily responsible for writing and posting original, creative content on the MidlevelU website is Erin Tolbert, the founder and director of MidlevelU and a family nurse practitioner in Nashville, Tennessee.

14. Ms. Tolbert founded MidlevelU in 2012. Since that time, she has invested countless hours and significant sums of money developing and maintaining the MidlevelU brand. In her capacity as Founder of MidlevelU, she has made dozens of appearances on CNN, Fox News, and other media outlets to develop MidlevelU's well-deserved reputation as an authoritative source of information and healthcare news for nurse practitioners. Given that she lives in Nashville, Tennessee, the time, money, and effort to fly to New York and Washington D.C. for these appearances was substantial.

15. Ms. Tolbert and her staff have written many hundreds of articles, posted as blog entries on the MidlevelU website; these blog entries are original creations of MidlevelU and are protected from infringement by federal copyright law.

16. MidlevelU has used the MidlevelU name and logo as marks in conjunction with the provision of trusted information, advice, and career services for nurse practitioners since 2012.

17. Defendant ACI posts content on its website and distributes content to third parties with whom it has contractual relationships. ACI does this for its economic benefit.

18. At all relevant times, ACI has been a subscription-based service.

19. ACI's website, located at https://aci.info, states that "ACI simplifies blog licensing and distribution." It claims it provides "distributors" with a "consolidated feed of high quality and copyright cleared blog content tailored to your needs," and it claims it provides "bloggers and publishers" with a "wide audience of professionals" and the opportunity to "uncover a new earning potential for your blog articles."

20. ACI's website says that it will notify blog authors if their material is included on its website, and it says that authors "get free premium access" to its blog index.

21. ACI also claims that "publishers choose to include their content on the ACI website."

22. These flowery promises and assertions of legal compliance are completely foreign to MidlevelU's experience with ACI.

23. MidlevelU had never heard of ACI until Ms. Tolbert discovered that ACI had taken hundreds of MidlevelU blog articles and posted them on its website for its subscribers to read. Based on MidlevelU's research to date, ACI took at least 823 MidlevelU articles without permission and posted them on its website.

24. ACI never asked for permission, and no one from MidlevelU ever gave permission, for ACI to use any of MidlevelU's content or anything else owned by MidlevelU on the ACI website.

25. The copying of content was hardly trivial and nor did ACI take a small snippet of MidlevelU's copyrighted works.

26. Rather, for each article, ACI would take the title and most of the content of a blog post and post it on its website, again using MidlevelU's copyrighted content for its own purposes and without permission. People reading MidlevelU content on the ACI website of course were diverted from reading it on the MidlevelU website.

27. Throughout the period of infringement, a reader could find a MidlevelU article on the ACI website and could review most of the relevant content of the article on the ACI website by clicking on the inaptly named "summary."

28. The "summary" or "snapshot" was in fact a word-for-word copying of a very substantial piece of each MidlevelU article.

29. ACI copied much of the blog article on its website, and manipulated the text and photos accompanying the article to suit its formatting needs. All of this was in violation of MidlevelU's rights as original author of the works.

30. Additionally and without permission, ACI used photos that MidlevelU had paid a third party to use in conjunction with MidlevelU's publication of the MidlevelU article on the MidlevelU website.

31. If the reader wanted to view the "full article," which was often scant more than what was in the "summary," the reader would click on "full article," at which point the reader would be prompted to pay for the "full article," by signing up for a monthly or yearly subscription to ACI.

32. ACI never reimbursed MidlevelU for income it generated from MidlevelU articles, and this practice was completely inconsistent with MidlevelU's rights to not charge readers for its content.

33. MidlevelU holds the copyright on all of the hundreds of blog articles copied by ACI and posted on the ACI website.

34. MidlevelU has valid copyright registrations on several dozen of the articles published by MidlevelU during the time period that ACI was posting MidlevelU content on its website.

35. MidlevelU's registrations include at least the following articles:

   a. Must-Have Posters for Your Primary Care Clinic TX 8-377-358
   b. Oncology Subspecialty Programs for Nurse Practitioners TX 8-372-764
   c. Medical Assistance in Flight: What's Your Liability Risk? TX 8-376-143
   d. Me vs. My Employer - When Do Nurse Practitioners Need an Attorney? TX 8-376-149
   e. 5 Not-so-Great Realities of Owning Your Own NP Practice TX 8-376-112
   f. Documenting a Back and Neck Exam Made Simple TX 8-377-242
   g. Working In an Academic Medical Center: The Good, the Bad, and the Ugly TX 8-376-148
   h. 4 Steps to Full Prescribing as a California Nurse Practitioner TX 8-376-411
   i. You've Finished Your Nurse Practitioner Program, Now How Do You Find a Job? TX 8-376-144
   j. Legal Considerations: Prescribing Medications for Friends and Family TX 8-370-983

k. CRNAs Earn Over 200K in These States TX 8-376-087
l. 10 Highest Paying Cities for Physician Assistants TX 8-376-150
m. CT Scans: When Do You Need Contrast? TX 8-376-147
n. This NP Owns Her Own Clinic, Could You? TX 8-370-920
o. The NP's Recipe for Job Search Networking Success TX 8-376-079
p. Auscultate It! Super Quick Lung Sounds Tutorial TX 8-356-508
q. Yep, Your Patients Are Stereotyping You By Gender TX 8-376-086
r. The State of the Nurse Practitioner Profession TX 8-371-836
s. How to Get Hired by a Practice that Doesn't Want New Grad NPs TX 8-376-114
t. How Much Will an Ivy League Nurse Practitioner Education Cost You? TX 8-376-145
u. 7 Steps to Finding Your Clinical Passion TX 8-377-268
v. Best Legal Advice for Nurse Practitioners in 2016 TX 8-376-419
w. X-Ray vs. CT vs. MRI: What's the Difference? TX 8-376-081
x. How Well Do You Know Your Injectable Anesthetics? TX 8-376-417
y. Phone Interview Tips for Job Seeking Nurse-Practitioners TX 8-376-155
z. Yes, You Can Deliver a Plan of Care with Confidence TX 8-376-142
aa. The 411 on Documenting a HEENT Exam TX 8-376-140
bb. Collaboration vs. Supervision: Understanding NP Scope of Practice TX 8-376-085
cc. 4 Things I Wish I Learned in My NP Clinical Rotations TX 8-376-116
dd. 4 Ways Your Boss is Measuring Your NP Performance TX 8-376-110
ee. How to Study for the Emergency Nurse Practitioner Certification Exam TX 8-376-406
ff. Googling Your Patients: Right or Wrong? TX 8-370-872
gg. How Do You Overcome Lack of Experience in a NP Job Interview? TX 8-376-109
hh. When Is It OK for a Nurse Practitioner to Fire a Patient? TX 8-372-697
ii. Do You Need Your Own Medical Malpractice Insurance? TX 8-376-146
jj. MD vs. NP vs. PA: Here's How the Number of Clinical Hours Compare TX 8-376-133
kk. Why NPs Need to Antibiogramit! TX 8-376-106
ll. 3 Things Nurse Practitioners Need to Know Before Volunteering TX 8-376-397
mm. Are You Eligible for NHSC Loan Repayment Opportunities TX 8-372-234
nn. Which Type of Medical Malpractice Policy is Right for You? TX 8-376-119
oo. Million Dollar Questions that Make Diagnosis and Treatment a Sinch TX 8-376-093
pp. Navigating FMLA + HIPAA: Notes for Nurse Practitioners TX 8-377-273
qq. 7 Questions to Ask Yourself Before Accepting a Job Offer TX 8-371-009
rr. How Accurate are Rapid Flu Tests? TX 8-378-762
ss. The Ultimate NP Resume Objective Statement TX 8-376-076
tt. Oh, $@#*%! 5 Steps to Take After Making a Medical Error TX 8-370-880
uu. Are We Asking Too Much of Preceptors? TX 8-376-082
vv. Info About the New NP Residency in 7 Informative Posts TX 8-371-025
ww. 3 Ways Student Loan Repayment is Offered to Nurse Practitioners TX 8-372-639
xx. What's the Average Hourly Wage for Nurse Practitioners? TX 8-371-003

36. Given that it appears ACI took every article MidlevelU published during the relevant time period, on information and belief, these registered articles were posted on the ACI website.

37. ACI has created a multi-channel business trading in the content generated by others.  ACI has a variety of partnerships through which it distributes content outside of its own website to other partners.

38. ACI not only scrapes content off of blogs, but it sells its blog index to other organizations.

39. On information and belief, ACI financially benefits from these partnerships. And, of course, MidlevelU never consented to its content being distributed or used in this commercial fashion.

40. It is well recognized that the more an article is copied and distributed on the Internet, the lower priority it receives in searching for that content through search engines such as Google.  Thus ACI's copying and distributing of MidlevelU's context had a damaging effect on MidlevelU's ability to promote its own articles.

### **COUNT I - COPYRIGHT INFRINGMENT -- 17 U.S.C. § 101 *et seq.***

41. The previous allegations are incorporated herein by reference as if fully restated.

42. MidlevelU owns the exclusive, valid copyright of each article written by MidlevelU representatives and posted on the MidlevelU website.  This includes the more than 800 articles discussed above.

43. Copyright registrations have been obtained for several dozen of these articles from the United States copyright office.

44. When ACI copied these MidlevelU copyrighted articles and posted them on the ACI website it copied all the constituent elements of the copyrighted works that are material.

45. ACI copied those articles, word for word, and posted large sections of them on its website, without any permission or license to do so.

46. ACI thus infringed on MidlevelU's copyrights in the 800 plus articles.

47. As demonstrated above, these acts of infringement were volitional, demonstrated, among other things, by the fact that ACI non-substantially tweaked the relevant formatting. The acts of infringement were intentional and willful.

48. MidlevelU has been damaged by ACI's acts of infringement.

49. MidlevelU is entitled to actual and/or statutory damages, treble damages, attorney's fees and actual damages in an amount to be determined at trial for ACI's copyright infringement.

## JURY DEMAND

MidlevelU prays for a jury on all issues of law and fact so triable.

## PRAYER FOR RELIEF

In light of the foregoing, MidlevelU prays for the following relief:

1. Actual damages, including the damage to MidlevelU's brand and the damage cause by the reduction in web traffic;

2. Statutory damages and attorney's fees for the in the maximum amount permitted by law;

3. The costs of this Action;

4. Any and all necessary and proper relief as justice requires.

Respectfully submitted,

*s/Allison S. Lovelady*
Allison S. Lovelady
Florida Bar No. 70662
Giselle M. Girones
Florida Bar No. 124373
Shullman Fugate, PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411

Phone: 754-301-8852
alovelady@shullmanfugate.com
ggirones@shullmanfugate.com
pleadings@shullmanfugate.com


Andrew A. Warth
(*pro hac vice* motion forthcoming)
Waller Lansden Dortch & Davis
501 Union Street, Suite 2700
Nashville, TN 37219
Phone: 615-850-8874
Drew.warth@wallerlaw.com