**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:18-cv-80843-RLR

MIDLEVELU, LLC,

       Plaintiff,

   v.

ACI INFORMATION GROUP,
       Defendant.

**<u>DEFENDANT NEWSTEX, LLC'S MOTION FOR SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW</u>**

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF LAW ............................................................................................. 1

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   FACTUAL BACKGROUND.................................................................................. 4

III.  ARGUMENT ......................................................................................................... 6

      **A.**    Summary Judgment Standard ............................................................... 6

      **B.**    Newstex Did Not Infringe Any Copyrights, Because MidlevelU Granted an Implied License by Disseminating the Full Content of the Alleged Articles on the MidlevelU RSS Feed Without Any Restrictions ............................................... 7

      **C.**    Newstex's Use of I-Frames on the Scholarly Blog Index to Display MidlevelU's Website Did not Infringe on MidlevelU's Copyrights .................... 13

      **D.**    MidlevelU Is Not Entitled to Statutory Damages for the 18 Articles That It Published More than 3 Months Prior to Registration ........................................... 15

      **E.**    MidlevelU Did Not Own the Copyrights to Three Alleged Articles until After Bringing This Lawsuit and Thus Is Not Entitled to Damages for These Articles ............................................................................................................... 16

            1.    Amanda Richards Was the Owner of the Copyrights in the Three Alleged Articles She Wrote For MidlevelU as of the Filing of this Suit ............................................................................................ 17

            2.    MidlevelU Cannot Sue for Infringement of Copyrights It Did Not Own at the Time of Filing Suit ................................................. 18

      **F.**    MidlevelU Cannot Sue for Infringement or Recover Damages for an Article Written by a Third Party Who Did Not Assign Ownership to MidlevelU ........... 19

IV.   CONCLUSION..................................................................................................... 20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................................6

*Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989).................................................................................................17

*Corwin v. Walt Disney Co.*,
475 F.3d 1239 (11th Cir. 2007) ...............................................................................17

*Dream Custom Homes, Inc. v. Modern Day Constr., Inc.*,
773 F. Supp. 2d 1288 (M.D. Fla. 2011)...................................................................20

*Field v. Google Inc.*,
412 F. Supp. 2d 1106 (D. Nev. 2006).................................................8, 9, 10, 11, 12

*Goldman v. Breitbart News Network, LLC*,
302 F. Supp. 3d 585 (S.D.N.Y. 2018)................................................................14, 15

*Herzog v. Castle Rock Entm't*,
193 F.3d 1241 (11th Cir. 1999) .................................................................................7

*Hilburn v. Murata Elecs. N. Am., Inc.*,
181 F.3d 1220 (11th Cir. 1999) .................................................................................7

*Jacob Maxwell, Inc. v. Veeck*,
110 F.3d 749 (11th Cir. 1997) ...................................................................................8

*Karlson v. Red Door Homes, LLC*,
611 F. App'x 566 (11th Cir. 2015) .......................................................................7, 8

*Keane Dealer Servs., Inc. v. Harts*,
968 F. Supp. 944 (S.D.N.Y. 1997) ............................................................................8

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2003) ...................................................................................13

*Key West Hand Print Fabrics, Inc. v. Serbin, Inc.*,
269 F. Supp. 605 (S.D. Fla. 1966) ..........................................................................20

*Latimer v. Roaring Toyz, Inc.*,
601 F.3d 1224 (11th Cir. 2010) ............................................................................8, 9

*Lorentz v. Sunshine Health Prods., Inc.*,
  No. 09-61529, 2010 WL 11492992 (S.D. Fla. Sept. 7, 2010) ...................................................6

*Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*,
  128 F.3d 872 (5th Cir. 1997) ......................................................................................8

*Optima Tobacco Corp. v. US Flue-Cured Tobacco Growers, Inc.*,
  171 F. Supp. 3d 1303 (S.D. Fla. 2016) ...................................................................19

*Parker v. Yahoo!, Inc.*,
  No. 07-2757, 2008 WL 4410095 (E.D. Pa. Sept. 25, 2008) .......................................10, 11, 12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...................................................................13, 14

*In re Pierre*,
  198 B.R. 389 (S.D. Fla. 1996) ......................................................................................7

*Platypus Wear Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao LTDA.*,
  No. 07-21827, 2010 WL 11442639 (S.D. Fla. June 21, 2010) ...................................................6

*Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC*,
  88 F. Supp. 3d 1356 (S.D. Fla. 2015) .......................................................18, 19, 20

*W. Trend, Inc. v. Marco Destin, Inc.*,
  No. 07-22508, 2007 WL 9653034 (S.D. Fla. Dec. 17, 2007)...........................................15, 16

**Statutes**

17 U.S.C. § 101...................................................................................................8, 18

17 U.S.C. § 106.......................................................................................................7

17 U.S.C. § 201(a) ...............................................................................................17

17 U.S.C. § 201(b) ...............................................................................................17

17 U.S.C. § 204(a) .................................................................................................8

17 U.S.C. § 412(2) ...........................................................................................15, 16

## MEMORANDUM OF LAW

Defendant Newstex, LLC ("Newstex" or "ACI" or "Defendant")[1], pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, requests entry of summary judgment in its favor and against Plaintiff MidlevelU, Inc.[2] ("MidlevelU") on the following grounds, as set forth more fully herein: (1) MidlevelU's claims are barred by the doctrine of implied license; (2) Newstex's use of "i-Frames" on the Scholarly Blog Index to display MidlevelU's website does not constitute infringement; (3) eighteen of MidlevelU's alleged articles are ineligible for statutory damages; (4) MidlevelU lacks standing and damages for three alleged articles it did not own at the time of filing suit; and (5) MidlevelU lacks standing and damages for one alleged article it has never owned.

## I.  PRELIMINARY STATEMENT

MidlevelU alleges that Newstex, through its operations under the trade name ACI Information Group, infringed on MidlevelU's registered copyrights for 50 blog posts that Newstex indexed abstracts of after receiving the full-text articles from MidlevelU's free, public RSS feed. MidlevelU's claims fail as a matter of law, because MidlevelU's practice of distributing the full-text of its blog posts for free to the public at large—including ACI—via MidlevelU's RSS feed provided ACI with an implied license to index the blog posts on ACI's Scholarly Blog Index, which published abstracts of the blog posts and provided links to MidlevelU's original blog posts and website. MidlevelU has published the full text of its articles through its free, publicly available RSS feed at all times ACI allegedly redistributed said content. Despite the alleged infringement in this action and in a prior litigation against a third party, MidlevelU grants all subscribers of its RSS

---

[1] ACI Information Group was established as a tradename by Newstex, LLC from 2015-2018 and functioned to aggregate scholarly blog content and develop indexes of same, and offer for distribution to academic libraries and publishers. Defendant's Statement of Undisputed Material Facts ("Def. SUMF") ¶ 2.

[2] On April 22, 2019, MidlevelU, LLC converted from a Tennessee limited liability company to a Delaware corporation. Dkt. No. 37.

feed the *full text* of its articles through this feed. Any subscriber could receive the full text of MidlevelU's blog posts and through that feed repost the full text of such articles. Moreover, MidlevelU published the full text of its posts through its RSS feed without imposing any restrictions regarding how subscribers could use MidlevelU's posts. MidlevelU could have implemented restrictions at any time. Nor did MidlevelU post any terms of service related to its RSS feed on its website. MidlevelU's RSS feed made available to ACI the MidlevelU blog posts, and ACI in turn posted abstracts on its Scholarly Blog Index, including full and proper attribution and an explicit link back to MidlevelU's website for the full text. MidlevelU's own actions in openly and freely providing full-text access to the public, and inactions in choosing to not restrict its RSS feed distribution, provided ACI with an implied license to aggregate the blog abstracts as it is accused of doing in this action.  Accordingly, the Court should grant summary judgment of non-infringement as to the entirety of MidlevelU's cause of action for copyright infringement.

In addition to the indexed abstracts, the ACI Scholarly Blog Index included links to the full text of the blog posts on MidlevelU's website. These links opened an "i-frame" pop-up window. These i-frames did not copy or store content from the MidlevelU site, but instead opened a pop-up browser window with a live view of MidlevelU's site. Since the content was not stored on ACI's site and a user was merely viewing MidlevelU's site, such i-frames are not infringing.

Even in the absence of an implied license as to all 50 asserted registered copyrights, MidlevelU is not entitled to at least a portion of its requested damages.  At least 18 of the asserted registered copyrights are not eligible for statutory damages, MidlevelU does not own at least one of the asserted registered copyrights, and MidlevelU admits to having no known damages for at least one asserted registered copyright that was assigned to MidlevelU.

2

MidlevelU failed to register 18 of the articles it alleges in its Complaint with the Copyright Office within three months of publication, a requirement under the Copyright Act for MidlevelU to be eligible for statutory damages. With respect to two of these articles, the copyright registrations reflect a date of first publication more than three months before the registration date. There is no factual or legal basis for MidlevelU to maintain its claim for statutory damages as to these two articles. With respect to the other 16 articles, while MidlevelU claimed in its copyright application that the date of first publication was within three months of the registration date, MidlevelU actually first published the articles much earlier and instead provided the Copyright Office with only a more recent re-publication date. Accordingly, the Court should grant summary judgment that MidlevelU is not entitled to statutory damages for 18 of its asserted registered copyrights.

At least four of the alleged articles were authored by third parties. One of those authors is an independent contractor hired by MidlevelU, who subsequently assigned any applicable copyright in her articles to MidlevelU in December 2018, well after the filing of this action and well after ACI had ceased all accused infringement, let alone published the abstract of the subject article. While the author also purportedly assigned the right to sue for past infringement, such a right would entitle MidlevelU to the author's damages from the past infringement, if any. MidlevelU admits that it has no evidence as to what damages the author may have incurred, and the author admits she had no damages. Accordingly, the Court should grant summary judgment that MidlevelU is not entitled to any damages for this assigned copyright. The other third-party author is not affiliated with MidlevelU in any capacity (other than being a guest blogger) and never executed any assignment of rights to MidlevelU. MidlevelU improperly claimed to be the author when filing its copyright registration for the subject article. Because the author was not an employee acting within the scope of her employment, nor entered into any "work made for hire" agreement with MidlevelU, nor

assigned her rights to MidlevelU, the Court should grant summary judgment that MidlevelU has no cause of action for infringement of this asserted copyright and that its registration of same is invalid.

## II.     FACTUAL BACKGROUND

Newstex, LLC d/b/a ACI Information Group is a leading wholesale aggregator of news publications that provides private and retail distributors with content from media companies, press release wires, corporate websites, investigative journalism organizations, non-profits, and online newspapers/magazines. Defs. SUMF ¶1.   Newstex created the Scholarly Blog Index of editorially selected and curated social media and blog publications as a new product offering in 2013, under the trade name ACI Information Group. Defs. SUMF ¶ 2. The Scholarly Blog Index consisted of an index of curated blog abstracts and licensed full-text blogs written by scholars in their fields. Defs. SUMF ¶ 4.   These blog abstracts and full-text blogs were indexed in a proprietary SBI database, which was offered on a subscription basis via a secure website and to 28 academic libraries throughout the United States, including Harvard, Princeton, and the research library of the Supreme Court of the United States. Defs. SUMF ¶ 5.   Newstex terminated the Scholarly Blog Index in March 2018 due to a lack of profitability. Defs. SUMF ¶ 6.

MidlevelU, Inc. f/k/a MidlevelU, LLC was founded by Erin Tolbert in 2012 as a resource for "Midlevels," such as nurse practitioners, who are licensed to provide a greater level of health care services than a registered nurse. Defs. SUMF ¶ 7. MidlevelU has authored hundreds of articles or blog posts of interest to medical providers that it posts to its website. Defs. SUMF ¶ 8. At least four of the asserted 50 registered articles were authored by third parties. Defs SUMF ¶¶ 26-35; 40-43. One of those authors is an independent contractor, Amanda Richards, hired by MidlevelU in 2015, who subsequently assigned any applicable copyright in the article to MidlevelU in December 2018. Defs. SUMF ¶¶ 21-26; 37.   The other third-party author is Leigh Ann O'Neill, a friend of Erin Tolbert. Defs. SUMF ¶ 45.   Leigh Ann O'Neill is a practicing attorney and is not affiliated

with MidlevelU in any capacity, other than being a guest blogger. Defs. SUMF ¶ ¶ 44-45. O'Neill never assigned her rights to MidlevelU and was never hired by MidlevelU as an employee. *Id.*

In addition to posting links to its articles on social media and networking sites, MidlevelU publishes the full content of its articles for free through the MidlevelU RSS feed on its website.[3] Defs. SUMF ¶ 9. MidlevelU has no restrictions or limitations on its RSS feed, nor any terms of service, apart from a copyright notice on its website and RSS feed.[4] Defs. SUMF ¶ 46. Moreover, MidlevelU has not changed its RSS feed since at least 2015. Defs. SUMF ¶ 47. Thus, at all times relevant to MidlevelU's claims in this action, MidlevelU was publishing the full text of its blog articles free of charge and publicly accessible through the MidlevelU RSS feed. Defs. SUMF ¶ 9.

ACI's practice for using third-party content for the Scholarly Blog Index was to post full content of an author's work when it received permission to do so from authors. Defs. SUMF ¶ 48. When ACI did not receive permission from an author to post the full content of his/her work, ACI's automated system would generate an abstract or summary of the content and post the abstract or summary on its page, with a link back to the original source. Defs. SUMF ¶ 49. From 2015-2017, ACI was a subscriber to MidlevelU's RSS feed, which permitted ACI to receive the full content of MidlevelU's articles posted on MidlevelU's RSS feed from 2015 to 2017.  Defs. SUMF ¶ 51. ACI's automated system generated abstracts for certain MidlevelU articles once it received the content from the MidlevelU RSS feed and posted those abstracts on the ACI Scholarly Blog Index from 2015 to 2017, with attribution to MidlevelU and a link back to the MidlevelU website. Defs. SUMF ¶¶ 52-53. The ACI Scholarly Blog Index also had the option of clicking on

---

[3] RSS stands for "Really Simple Syndication." Defs. SUMF ¶ 10. Websites that elect to employ said RSS web feed protocol are able to disseminate their content to a wide audience by allowing those who subscribe to the website's RSS feed to access said content without visiting the original website. Defs. SUMF ¶ 11.

[4] The parties dispute when and to what extent the copyright notice has appeared; however, this is not material to a determination of Newstex's motion for summary judgment.

a live view, or i-frame, of the MidlevelU articles for the corresponding abstracts of the MidlevelU articles that were available on the ACI Scholarly Blog Index. Defs. SUMF ¶ 54.

On March 7, 2017, MidlevelU contacted Newstex and demanded that Newstex take down MidlevelU's content from the Scholarly Blog Index by March 21, 2017. Defs. SUMF ¶ 15. Newstex took down all MidlevelU content the very same day, on March 7, 2017. Defs. SUMF ¶ 16. On March 20, 2017, after confirming that MidlevelU's content was no longer associated with its Scholarly Blog Index, Newstex informed MidlevelU that all content had been removed. Defs. SUMF ¶ 17. Newstex did not hear further from MidlevelU until it filed this lawsuit.  Defs. SUMF ¶ 18. MidlevelU filed this action on March 27, 2018 for copyright infringement, alleging that ACI published on the Scholarly Blog Index content from 823 MidlevelU blog articles. Defs. SUMF ¶ 19. MidlevelU asserted infringement of copyright registrations in 50 of these articles ("alleged articles"), seeking actual and statutory damages. Defs. SUMF ¶ 18.

## III.   ARGUMENT

### A.   Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense[5]—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Once the motion is supported by a prima facie showing that

---

[5] *See also, e.g.*, *Platypus Wear Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao LTDA.*, No. 07-21827, 2010 WL 11442639, at *2 (S.D. Fla. June 21, 2010) (granting partial summary judgment where expert testimony was used to try and show that a party intended to deceive the copyright office during registration); *Lorentz v. Sunshine Health Prods., Inc.*, No. 09-61529, 2010 WL 11492992, at *11 (S.D. Fla. Sept. 7, 2010) (granting partial summary judgment where the Copyright Act precludes statutory damages or attorney's fees).

the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial."  *In re Pierre*, 198 B.R. 389, 391 (S.D. Fla. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-249 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "Thus, a party, who is faced with a properly supported summary judgment motion, is obligated to come forward with extrinsic evidence which is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial' in order to avoid the entry of a summary judgment." *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999) (citing *Celotex*, 477 U.S. at 322).  "There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the non-moving party."  *Pierre*, 198 B.R. at 391 (citing *Matsushita*, 475 U.S. at 587).

### B. Newstex Did Not Infringe Any Copyrights, Because MidlevelU Granted an Implied License by Disseminating the Full Content of the Alleged Articles on the MidlevelU RSS Feed Without Any Restrictions

MidlevelU granted an implied license for Newstex to index its blog articles by publishing to the entire world for free the full content of MidlevelU's blog articles onto its RSS feed—without any restrictions whatsoever—for the purpose of distribution to a wider audience.

In order to state a claim for copyright infringement, Plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247-48 (11th Cir. 1999). A license is an affirmative defense to copyright infringement. *Karlson v. Red Door Homes, LLC*, 611 F. App'x 566, 569 (11th Cir. 2015). While the Copyright Act provides a copyright owner with the exclusive right to copy, distribute, or display his work under 17 U.S.C. § 106, a copyright owner can transfer copyright ownership through the grant of an exclusive license, which must be in writing under 17 U.S.C. §

204(a). *Id.* at 569-70. Alternatively, through a nonexclusive license, a copyright owner may allow another to use the copyrighted material without transferring ownership in the material. *Id.* at 569. In a nonexclusive license, "the copyright owner . . . permits the use of a copyrighted work in a particular manner." *Id.* (internal citations omitted). The grant of a nonexclusive license does not need to be in writing under the Copyright Act,[6] and "it may occur orally or may be ***implied*** from the copyright owner's conduct." *Id.* (emphasis added) (citing *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1235 (11th Cir. 2010)); 17 U.S.C. §§ 101, 204(a); *see also Jacob Maxwell, Inc. v. Veeck,* 110 F.3d 749, 752 (11th Cir. 1997) (non-exclusive licenses "may be granted orally, or may even be implied from conduct").

"[A]n implied license can be found where the copyright holder engages in conduct from which the other party may properly infer that the owner consents to his use." *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006). Moreover, "consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it." *Id.*; *see also Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) ("Consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license."). "Courts focus on objective evidence revealing the intent of the parties to determine if an implied license exists, and this inquiry also reveals the scope of that license." *Latimer*, 601 F.3d at 1235 (citing *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009). In granting an implied license, the putative copyright owner "must express the intent to limit the scope of a license," and "an implied license will be limited to a specific use

---

[6]A nonexclusive license does not have to be in writing because 17 U.S.C. § 101, which contains definitions for the Copyright Act, does not include the assignment of nonexclusive licenses in the definition of transfer of copyright ownership. *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997).

only if that limitation is expressly conveyed when the work is delivered." *Id.* (citing *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008).

Given the relatively recent widespread use of RSS feeds by blogs and online news media, there is little to no case law concerning licenses to use content published through an RSS feed.[7] However, Courts have analyzed analogous circumstances involving re-publication and archiving copies of internet content and have ruled that the implied license defense does indeed absolve an alleged infringer of liability for copyright infringement. For example, in one frequently cited case, *Field v. Google Inc.*, the plaintiff author sued Google for copyright infringement, contending that by allowing internet users to access copies of 51 of Field's copyrighted works stored in Google's "cached" website repository, Google violated the exclusive right to reproduce and distribute copies of those works.[8] 412 F. Supp. 2d 1106, 1109 (D. Nev. 2006). The court granted Google's motion for summary judgment, holding, *inter alia*, that Field's public dissemination and failure to restrict access granted Google an implied license.

---

[7] This is also because it is extremely rare for blog authors to register copyrights in blog posts, something that even the most prolific and popular blogs do not do.  However, this fact is not necessary for summary judgment.

[8] The court described Google's archival process, which is relevant to see the similarities to Newstex's accused conduct:

> Google . . . uses an automated program (called the "Googlebot") to continuously crawl across the Internet, to locate and analyze available Web pages, and to catalog those Web pages into Google's searchable Web index. As part of this process, Google makes and analyzes a copy of each Web page that it finds, and stores the HTML code from those pages in a temporary repository called a cache. Once Google indexes and stores a Web page in the cache, it can include that page, as appropriate, in the search results it displays to users in response to their queries. When Google displays Web pages in its search results, the first item appearing in each result is the title of a Web page which, if clicked by the user, will take the user to the online location of that page. The title is followed by a short "snippet" from the Web page in smaller font. Following the snippet, Google typically provides the full URL for the page. Then, in the same smaller font, Google often displays another link labeled "Cached." When clicked, the "Cached" link directs an Internet user to the archival copy of a Web page stored in Google's system cache, rather than to the original Web site for that page. By clicking on the "Cached" link for a page, a user can view the "snapshot" of that page, as it appeared the last time the site was visited and analyzed by the Googlebot. The page a user retrieves from Google after clicking on a "Cached" link contains a conspicuous disclaimer at the top explaining that it is only a snapshot of the page from Google's cache, not the original page, and that the page from the cache may not be current. The disclaimer also includes two separate hyperlinks to the original, current page.

*Id.* at 1110-11.

Significantly, in finding that Field had granted Google an implied license, the court emphasized that Field failed to take available steps to prevent Google from archiving a cached version of his website, such as using specific "no archive" instructions in his website meta-tags. *See id.* at 1112-13.  Field published his writings on his website, which was free and accessible to the world.  *Id.* at 1114.  Similarly, MidlevelU did not include any restrictions on its RSS feed, publishing its articles in full text, for free, to anyone.  The *Field* court interpreted Field's willful inaction as an attempt to "manufacture a claim for copyright infringement," because he "consciously chose not to use the 'no-archive' meta-tag on his Web site." *Id.* at 1113-14. In granting summary judgment in favor of Google, the Court stated: "Thus, with knowledge of how Google would use the copyrighted works he placed on those pages, and with knowledge that he could prevent such use, Field instead made a conscious decision to permit it. His conduct is reasonably interpreted as the grant of a license to Google for that use." *Id.* at 1116.[9]

Similarly, a website owner sued Microsoft and Yahoo claiming that by making cached copies of his websites available to their users and republishing his works in their entirety without his permission, Microsoft and Yahoo were liable for copyright infringement. *Parker v. Yahoo!, Inc.*, No. 07-2757, 2008 WL 4410095, at *1 (E.D. Pa. Sept. 25, 2008). Plaintiff contended that this was differed from *Field v. Google*, because instead of snippets of information, the defendants republished his works in their entirety, and because he had provided "constructive notice" to the defendants that he had not granted them a license since he registered the copyrights in his works and included a copyright notice on his website. *Id.* at *4. The Court disagreed and held that Yahoo and Microsoft did have a proper implied license defense:

---

[9] The *Field* court also highlighted the fact that Google promptly removed the "cached" links to all of Field's web pages when it learned of Field's complaint.  *Id.* at 1114.  Similarly, Newstex removed all accused content the same day MidlevelU sent its initial cease and desist letter, on March 7, 2017.  Defs. SUMF ¶ 16.

> [Plaintiff] knew that as a result of his failure to abide by the search engines' procedures, the search engines would display a copy of his works. From [Plaintiff's] silence and lack of earlier objection, the defendants could properly infer that Parker knew of and encouraged the search engines' activity, and, as did the defendants in *Field*, they could reasonably interpret Parker's conduct to be a grant of a license for that use.

*Id.*[10]

Like the option the plaintiffs had in *Field v. Google* and *Parker v. Yahoo!* to encode their websites with certain meta-tags to prevent a search engine from creating a cache of the websites, MidlevelU had the option to encode its own RSS feed to publish less than the full text of its blog articles, or to restrict access to its RSS feed. Instead, MidlevelU consciously chose to include in its RSS feed the full content of the 50 alleged articles (and all other blog posts), all of which are freely available to the public, and has continued to do so despite the infringement alleged herein. Defs. SUMF ¶ 47. It did so without providing *any* restrictions or terms of service for its RSS feed or any express terms of service on its blog, apart from a passive copyright notice on the website and RSS feed, even though it was using the RSS feed for its intended purpose of disseminating MidlevelU content to a wide audience. Defs. SUMF ¶ 46. Notably, MidlevelU selectively registered a number of its blog posts for copyright registrations prior to bringing a copyright infringement lawsuit against another Company, Doximity Inc., in March 2017, for posting its content to Doximity's website. Defs. SUMF ¶ 57. This is the only time MidlevelU has registered copyrights in its blog posts.  Defs. SUMF ¶ 97.  Doximity similarly asserted an implied license defense on the basis of the availability of the full content of MidlevelU's blog posts through its

---

[10] Moreover, in dismissing plaintiff's claims for contributory and vicarious copyright infringement, the court noted: "Parker has alleged that his copyrighted works are freely available and that he has taken no steps, aside from filing this suit, to prevent search engines from copying and displaying his works.  By publishing his works online with no registration required or any other access measure taken, Parker impliedly authorizes internet users at large to view his content and, consequently, to make incidental copies necessary to view his content over the internet." *Id.* at \*5. Similarly, MidlevelU publishes its blog articles and RSS feed online with no restrictions or any other access measures taken, and MidlevelU has taken no steps aside from filing suit to prevent public access and dissemination of its articles.

RSS feed, without any restriction or terms of service. Defs. SUMF ¶ 96. Rather than revising the content of its RSS feed, adding restrictions, or objecting to the use of content through its RSS feed after being on notice of how other sites were construing the Plaintiff's RSS feed as an implied license to use MidlevelU content, Plaintiff settled the Doximity case and promptly brought suit against Newstex in March 2018. Defs. SUMF ¶ 18; 98.

Unlike the defendants in *Field v. Google*  and *Parker v. Yahoo!* that provided snapshots of the webpage and the full content of the Plaintiffs' websites (and were still found to have had an implied license), the ACI Scholarly Blog Index published only a snippet or abstract of the MidlevelU content on its site.[11] Defs. SUMF ¶ 52. The ACI Scholarly Blog Index also provided full attribution to MidlevelU, with a link to MidlevelU's website and a copyright notice for the Plaintiff. Defs. SUMF ¶ ¶ 52-53. In indexing the MidlevelU blog articles, the ACI Scholarly Blog Index utilized only the information provided by MidlevelU *for free to the world* via its RSS feed.

MidlevelU should not be permitted to use the RSS feed to "manufacture a claim for copyright infringement" by widely disseminating content and failing to restrict the amount of content available or providing any terms of service, especially after having knowledge that subscribers were interpreting the content available through MidlevelU's RSS feed as an implied license to distribute and use that content.  Like the plaintiffs in *Google v. Feld* and *Parker v. Yahoo!*, Newstex had an implied license to use MidlevelU content on its site, based on the lack of RSS feed restrictions and the silent consent MidlevelU offered subscribers of its RSS feed.  The Court should grant summary judgment of non-infringement as to all alleged articles.

---

[11] Newstex anticipates that MidlevelU will advance the semantic argument that Newstex's publications were quantitatively more than a "snippet" or "abstract."  Newstex's implied license defense is independent of how long each abstract was, because an implied license would extend to the full text as published through the RSS feed.

### C.      Newstex's Use of I-Frames on the Scholarly Blog Index to Display MidlevelU's Website Did not Infringe on MidlevelU's Copyrights

To the extent the Court does not find that Newstex had an implied license and that a material fact exists for trial, the Court may still find on summary judgment that Newstex's display of full-text MidlevelU blog articles via special pop-up windows that open to MidlevelU's live site does not constitute infringement.   In addition to the indexed abstracts of the blog articles, the Scholarly Blog Index also included an "i-frame" pop-up, which would open upon a user's request to access the full text of the article. Defs. SUMF ¶ 54.  After clicking for access, the user would obtain a direct, live view of the post on the MidlevelU website through an "i-frame" pop-up. Defs. SUMF ¶ 55.  Courts have held that this process, known as in-line linking and framing, does not violate the Copyright Act.  *See, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 822 (9th Cir. 2003).

In *Perfect 10, Inc. v. Amazon.com, Inc.*, Perfect 10 sued Google for providing in-line links to third party websites that did not have authorization to publish Perfect 10's photos.[12] Perfect 10 tried to argue that "Google displays a copy of the full-size images by framing the full-size Perfect 10 images, which gives the impression that Google is showing the image within a single Google webpage." *Id.* at 1160. The court disagreed: "While in-line linking and framing may cause some computer users to believe they are viewing a single Google webpage, the Copyright Act, unlike

---

[12] The Court explained the process of in-line linking and framing as follows: "When a user clicks on the thumbnail image returned by Google's search engine, the user's browser accesses the third-party webpage and in-line links to the full-sized infringing image stored on the [third party] website publisher's computer. This image appears, in its original context, on the lower portion of the window on the user's computer screen framed by information from Google's webpage . . . Google simply provides HTML instructions directing a user's browser to access a third-party website. However, the top part of the window (containing the information from the Google webpage) appears to frame and comment on the bottom part of the window. Thus, the user's window appears to be filled with a single integrated presentation of the full-size image, but it is actually an image from a third-party website framed by information from Google's website. The process by which the webpage directs a user's browser to incorporate content from different computers into a single window is referred to as "in-line linking." The term "framing" refers to the process by which information from one computer appears to frame and annotate the in-line linked content from another computer." 508 F.3d 1146, 1155 (9th Cir. 2007).

the Trademark Act, does not protect a copyright holder against acts that cause consumer confusion." *Id.* at 1161. Most importantly, the Ninth Circuit did not find that the framing process was infringing for purposes of the Copyright Act, noting that the process itself does not involve storage of the images or content:

> Google does not, however, display a copy of full-size infringing photographic images for purposes of the Copyright Act when Google frames in-line linked images that appear on a user's computer screen. Because Google's computers do not store the photographic images, Google does not have a copy of the images for purposes of the Copyright Act . . . . Instead of communicating a copy of the image, Google provides HTML instructions that direct a user's browser to a website publisher's computer that stores the full-size photographic image. Providing these HTML instructions is not equivalent to showing a copy. First, the HTML instructions are lines of text, not a photographic image. Second, HTML instructions do not themselves cause infringing images to appear on the user's computer screen. The HTML merely gives the address of the image to the user's browser. The browser then interacts with the computer that stores the infringing image.

*Id.* at 1161.

Unlike the Google search engine, which may have directed users to third-party sites that contained infringing uses of Perfect 10's images, the Scholarly Blog Index i-frame did not take a user to an infringing third-party site. Defs. SUMF ¶¶ 54-56.  Instead, the Scholarly Blog Index i-frame directed users to MidlevelU's content *on MidlevelU's site*, requiring the user to request such a view first.[13] Defs. SUMF ¶¶ 54-56. Because the Scholarly Blog Index did not copy and then

---

[13] The court in *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 587 (S.D.N.Y. 2018), declined to follow the *Perfect 10 v. Amazon* ruling in a case where news media sources embedded a photo from a twitter feed directly onto their news articles. In declining to follow *Perfect 10*, the Court distinguished embedding a photo into an article for the user "without the user  having to click on a hyperlink or thumbnail in order to view the Photo" from the Google search engine, which provided "a service whereby the user navigated from webpage to webpage, with Google's assistance . . . . This is manifestly not the same as opening up a favorite blog or website to find a full color image awaiting the user, whether he or she asked for it, looked for it, clicked on it, or not. Both the nature of Google Search Engine, as compared to the defendant websites, and the volitional act taken by users of the services, provide a sharp contrast to the facts at hand." Unlike the photos embedded into articles in *Goldman*, ACI's pop-up i-frames with the live view of the MidlevelU website were generated only if users asked for them. Moreover, the source as MidlevelU was clear from the pop-up, which appeared as another browser with a live-view of the site.

display the content through its pop-up live view of the site, its process of in-line linking and framing does not constitute copyright infringement, and summary judgment is appropriate.

### D. MidlevelU Is Not Entitled to Statutory Damages for the 18 Articles That It Published More than 3 Months Prior to Registration

"[N]o award of statutory damages or of attorney's fees . . . shall be made for—(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, *unless such registration is made within three months after the first publication of the work*." 17 U.S.C. § 412(2) (emphasis added); *see also W. Trend, Inc. v. Marco Destin, Inc.*, No. 07-22508, 2007 WL 9653034, at *2 (S.D. Fla. Dec. 17, 2007), report and recommendation adopted, No. 07-22508, 2008 WL 11332043 (S.D. Fla. Jan. 17, 2008) ("Even if the copyright is registered, the plaintiff cannot recover statutory damages and attorney's fees for any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.") (internal citations omitted).

For 18 of the alleged articles,[14] Plaintiff registered each of the articles with the Copyright Office more than 3 months after the first publication of the article to its site. Defs. SUMF ¶¶ 57-93. In subscribing to MidlevelU's RSS feed, Newstex received the full text of the articles at their time of publication. Defs. SUMF ¶ *Id.* Thus, the actual dates of first publication are shown by the dates Newstex received these articles through MidlevelU's RSS feed. Defs. SUMF. ¶¶ 53; 57-93. Newstex received each of these articles prior to the dates of first publication alleged in these

---

[14] The name of the 18 articles, Plaintiff's alleged first publication date listed in its copyright registration certificate, and the actual publication date based on Newstex's receipt of the full, published article via MidlevelU's RSS feed, are listed in Defs. SUMF ¶¶ 57-93.

copyright registrations and more than three months prior to the date of registration. *Id.* The Scholarly Blog Index then indexed the abstracts of the articles upon receipt. Defs. SUMF ¶ 52. Based on Newstex's system data from its Scholarly Blog Index, the full text of each of these 18 alleged articles was received and published more than three months before the date of registration, making each registration ineligible for statutory damages.

MidlevelU admitted in the deposition of its Rule 30(b)(6) designee that in identifying the publication dates for the copyright applications MidlevelU merely looked at the then-current dates of publication on the blog.  Defs. SUMF. ¶ 94,  Plaintiff admitted also that it revises and re-publishes blog articles without preserving the original publication, noting that once MidlevelU edits a post, MidlevelU only preserves the date of the most recent edited version of the article, not the date the article was first published. Defs. SUMF ¶ 94. This means that MidlevelU has no evidence to contradict the RSS feed receipt data from the ACI Scholarly Blog Index and Newstex's witness testimony concerning same.

Pursuant to 17 U.S.C. § 412(2), no award of statutory damages or of attorneys' fees is available for the foregoing works, even if there were any infringement, because Newstex's publication commenced after first publication of the work and before the effective date of its registration, and such registration was not made within three months after the first publication of the work.  Therefore, because these 18 articles are registered more than three months prior to Plaintiff's obtainment of a registration, these articles are not eligible for statutory damages.

### E. MidlevelU Did Not Own the Copyrights to Three Alleged Articles until After Bringing This Lawsuit and Thus Is Not Entitled to Damages for These Articles

MidlevelU's independent contractor executive assistant, Amanda Richards, wrote three of the alleged articles for MidlevelU. Defs. SUMF ¶ 21. Ms. Richards did not assign her copyright ownership in these articles to MidlevelU until December 2018. Defs. SUMF ¶ 37. Because

MidlevelU was not assigned the copyright in Amanda's articles until after the start of the litigation, MidlevelU is not entitled to damages and does not have standing to sue for any alleged infringement of these three articles.

**1.    Amanda Richards Was the Owner of the Copyrights in the Three Alleged Articles She Wrote For MidlevelU as of the Filing of this Suit**

The Copyright Act states that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). Ideas, as opposed to expression of those ideas, are not protected by copyright law. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007) (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999)). The Copyright Act carves out an exception for ownership for works made for hire. 17 U.S.C. § 201(b). If the work is for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary. *Id.* When a work is authored by an independent contractor as opposed to an employee within the scope of employment, there must be a written work-made-for-hire agreement to effectuate transfer of ownership. 17 U.S.C. §101; *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 736.[15]

As testified by MidlevelU's Rule 30(b)(6) designee, Ms. Richards is an independent contractor. Defs. SUMF ¶ 22. Similarly, Ms. Richards testified that she is her own boss and an independent contractor. Defs. SUMF ¶ 22. Ms. Richards testified that while Mrs. Tolbert would

---

[15] Even if Ms. Richards signed a work for hire agreement after this action commenced due to her role as an independent contractor, her articles do not fall into one of the nine categories of works enumerated in 17 U.S.C. §101 under the definition of "work made for hire" for which copyright ownership can be signed over in writing through a work for hire agreement.

17

often provide Ms. Richards ideas or topics for the articles and that they would sometimes discuss these ideas, Ms. Richards undertook independent research and drafted these articles on her own. Defs. SUMF ¶ 23. While Mrs. Tolbert sometimes edited the articles before posting them to the blog, edits were often minimal, especially after Ms. Richards had experience writing posts. Defs. SUMF ¶ 24. Ms. Richards was also was able to work on these articles on her own schedule, with no supervision, from a remote location. Defs. SUMF ¶ 25. Therefore, Ms. Richards was the owner of the copyright in the articles she wrote for MidlevelU until her assignment of these rights to MidlevelU in December 2018. Defs. SUMF ¶ 37.

### 2.      MidlevelU Cannot Sue for Infringement of Copyrights It Did Not Own at the Time of Filing Suit

MidlevelU was not the owner of the copyright in the three articles written by Ms. Richards at the time it filed this action. Assignment of rights made *after* litigation has commenced cannot retroactively resolve the problem that the assignee who filed the lawsuit lacked standing at the time of filing. *Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1370 (S.D. Fla. 2015). "Under the Copyright Act, only the legal or beneficial owner of an exclusive right under a copyright may institute an action for any infringement of that particular right while he or she is the owner of it." *Id.* However, "if the assignee did not have the right to sue when litigation was commenced, the assignee lacks standing to maintain the action." *Id.* at 1370 (citing *Lorentz v. Sunshine Health Prods., Inc.*, No. 09-61529, 2010 WL 3733986, at * 6 (S.D. Fla. Aug. 27, 2010)); *see also Optima Tobacco Corp. v. US Flue-Cured Tobacco Growers, Inc.*, 171 F. Supp. 3d 1303, 1308 (S.D. Fla. 2016) (noting that the copyright owner must have such status at the time of the alleged infringement to have standing to sue). In *Prof'l LED Lighting*, the court found that the Plaintiff lacked standing to sue for copyright infringement because it did not own the copyright or have rights to sue until after litigation had commenced. The plaintiff alleged in the complaint that

another party was the owner of the copyrighted videos at issue but alleged that they were assigned the rights. The court found that assignment must pre-date the litigation for plaintiff to have standing. Accordingly, the court dismissed for lack of standing, with prejudice.

Similar to the Plaintiff in *Prof'l Led Lighting*, MidlevelU lacks standing to assert infringement of articles it did not own the copyrights in at the time it commenced this lawsuit. Ms. Richards purportedly assigned her copyright ownership to MidlevelU months after MidlevelU filed its complaint, and she testified that the parties had not discussed copyright ownership prior to the signing of the articles. Defs. SUMF ¶ 36. Moreover, MidlevelU cannot recover any damages for articles it did not own and for which the assignor did not suffer any damages.[16] The Court should grant summary judgment and dismiss MidlevelU's infringement claim as to these articles.

**F.     MidlevelU Cannot Sue for Infringement or Recover Damages for an Article Written by a Third Party Who Did Not Assign Ownership to MidlevelU**

One of the 50 alleged articles in MidlevelU's complaint was written by a third party acquaintance of Mrs. Tolbert's, an attorney named Leigh Ann O'Neill. Defs. SUMF ¶¶ 40-43. While MidlevelU registered this article with the Copyright Office with MidlevelU as the author, Ms. O'Neill testified that she never signed any agreements transferring copyright ownership to MidlevelU for this article, did not receive any compensation for her post on the MidlevelU site, and was never hired by MidlevelU as an employee. Defs. SUMF ¶ ¶ 41-43. Because MidlevelU was not the author of the article and was never assigned the copyright rights to this article,

---

[16] In the alternative, even if this Court does find that MidlevelU had standing to sue on these three articles on Ms. Richard's behalf prior to Ms. Richards assigning ownership of her copyrights in the articles, damages should be limited to the damages Ms. Richards incurred from the alleged infringement. *See* 6A C.J.S. Assignments § 111 (2009) ("If the assignor suffered no damages, or is not owed anything under a contract, the assignee cannot recover anything."). Ms. Richards testified that she did not suffer any damages from the alleged infringement. Defs. SUMF ¶ 38. Similarly, MidlevelU's Rule 30(b)(6) witness was unaware of any damages Ms. Richards incurred from the alleged infringement. *Id.*

MidlevelU's copyright registration of the article listing MidlevelU as the author is invalid.[17] Additionally, as described above with respect to Ms. Richards, because Ms. O'Neill never assigned her copyright in the article, MidlevelU does not have standing to sue for copyright infringement or recover any damages for any alleged infringement of Ms. O'Neill's article.  *See Prof'l LED Lighting*, 88 F. Supp. 3d at 1370.

## IV.    CONCLUSION

For all of the foregoing reasons, there remain no genuine disputes as to any material facts, and the Court should grant summary judgment in Newstex's favor that: (1) MidlevelU's claims are barred by the doctrine of implied license; (2) Newstex's Use of i-Frames on the Scholarly Blog Index to Display MidlevelU's Website Did not Infringe any MidlevelU Copyrights; (3) MidlevelU Is Not Entitled to Statutory Damages for the 18 Articles That It Published More than 3 Months Prior to Registration; (4) MidlevelU Did Not Own the Copyrights to Three Alleged Articles Until After Bringing This Lawsuit and Thus Is Not Entitled to Damages for These Articles; and, (5) MidlevelU Cannot Sue for Infringement or Recover Damages for an Article Written by a Third Party Who Did Not Assign Ownership to MidlevelU.

---

[17] While there is a presumption that a copyright is valid, this presumption is overcome "by providing proof of deliberate misrepresentation. A material misstatement in a copyright registration application is one which goes towards the registrability of the materials, such as originality, the nature of the materials to be copyrights, and *contested claims of authorship and ownership*." *Dream Custom Homes, Inc. v. Modern Day Constr., Inc.*, 773 F. Supp. 2d 1288, 1302 (M.D. Fla. 2011) (emphasis added).  While "it is not necessary that the owner's true name be used at all [for copyright registration] so long as a name with which it is identified is used and no innocent persons are misled." *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.*, 269 F. Supp. 605, 611 (S.D. Fla. 1966).

Dated: June 12, 2019

Respectfully submitted,

FOX ROTHSCHILD LLP
/s *Christopher R. Kinkade*
Christopher R. Kinkade
997 Lenox Drive
Lawrenceville, NJ 08648
Tel: 609-844-3023
Email: ckinkade@foxrothschild.com

Seth Brian Burack (FL State Bar No. 68360)
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Tel: 561-835-9600
Email: sburack@foxrothschild.com

Shireen Nasir
101 Park Avenue, 17th Floor
New York, NY 10178
Tel: 646-601-7649
Email: snasir@foxrothschild.com

*Attorneys for Defendant Newstex, LLC d/b/a
ACI Information Group*